COASTAL STATES PETROCHEMICAL COMPANY, Appellant,

v.

COOPER PETROLEUM COMPANY et al., Appellees.

No. 15486.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

June 19, 1969.

Rehearing Denied Sept. 11, 1969.

W. T. Blackburn, Corpus Christi, for appellant.

John A. Croom, Houston, for appellees.

PEDEN, Justice.

Appellant, Coastal States Petrochemical Company, alleged as plaintiff in this suit that appellee James R. Clark, as vice president of both International Marketing, Inc. (I.M.I.) and Cooper Petroleum Company, had fraudulently misrepresented to appellant that appellees Albert E. Fagan and Cooper Petroleum Co. were backing I.M.I. and would stand behind its debts since I.M.I. and Cooper Petroleum Co. were one and the same company. As a result of these representations, appellant contends, it was misled into extending credit to I.M.I. and thereby suffered a loss when I.M.I. was declared bankrupt and Fagan and Cooper declined to pay I.M.I.'s debt to the appellant. Coastal States further alleged that Cooper Petroleum and I.M.I. were each the alter ego of Fagan. Alternatively, appellant's petition asserted that Cooper Petroleum so dominated the affairs of I.M.I. that the latter had no genuine and separate corporate existence apart from Cooper Petroleum.

At the completion of Coastal States' presentation of evidence, the trial court granted a motion for instructed verdict in favor of appellees Fagan and Cooper Petroleum. A judgment in favor of appellee Clark was entered by the trial court on jury findings.

In response to Special Issue No. 1, the jury found that Clark had represented to officers of Coastal States that Cooper and Fagan would stand behind the debts of I.M.I. and would pay Coastal States if I.M.I.

was unable to do so. The next eleven issues were conditionally submitted and each was answered. The jury found that 2) Coastal States' officers believed such representation, and 3) it was false. The jury did *not* find, however, that Clark knew when he made such representation that Cooper and Fagan would not stand behind I.M.I. and pay I.M.I.'s debts to Coastal States. It further found: 5) in making such representation, Clark intended to cause Coastal States to execute the contract dated March 13, 1963 and 6) to make the open account gasoline sales to I.M.I. during 1963, 7) Coastal States relied on this representation in executing the contract of March 13, 1963, and 8) in making its gasoline sales to I.M.I. in 1963, 9) the representation was a material inducement in Coastal States' decision to execute the March 13, 1963 contract, and 10) to make the open account gasoline sales to I.M.I. in 1963, and 11) the representation was of such a nature and made under such circumstances that Coastal States had a right to rely on it in making its decision to execute the contract. However, the jury did not find 12) that the representation was such that Coastal States had a right to rely on it in making the open account gasoline sales.

Appellant's first point of error is that the trial court erred in refusing to admit in evidence, for the limited purpose of showing the fraudulent intent of Clark, the testimony of the witness John Kane to the effect that after Clark had made similar fraudulent representations to him, Cooper did not perform in accordance with such representations. Appellant argues in its brief that this exclusion of testimony probably caused the jury to answer the fourth special issue adversely to it. Kane testified that in about 1962, while he was employed by LaGloria Oil and Gas Co., it began selling aviation fuel to I.M.I. After a time I.M.I. got behind in its payments to LaGloria, and appellee Clark got Cooper Petroleum to give LaGloria a written guaranty of payment of I.M.I.'s account. He testified that Clark had told him that Coop-

er would stand behind the account and back it. Kane was then asked whether Cooper Petroleum voluntarily paid La-Gloria on that guaranty. Appellees objected that the matter was immaterial, and their objection was sustained. Kane's answer, preserved in a bill of exception, was that Cooper did not voluntarily pay La-Gloria and LaGloria had to try to collect through a suit. Appellant then offered this excluded testimony "for the limited purpose of showing the fraudulent intent on the part of Mr. Clark and Cooper Petroleum Co. and a course of dealings whereby they represented to various companies that Cooper would pay debts of International Marketing, Inc., and in fact did not do that."

We hold that the trial judge did not err in excluding the testimony in question. Appellant must (and does) confine the scope of its complaint on this point to the contention that the excluded testimony would have helped it to get a favorable finding from the jury on Issue No. 4. Appellant got favorable findings on the only other issues to which this excluded testimony might have been relevant.

So, in determining whether the exclusion was erroneous, we are concerned only with the relevance, materiality and benefit to the appellant of the excluded testimony to the fourth special issue.

■ That issue inquired as to whether Clark knew—at the time he made the representation in question—that Cooper and Fagan would not pay I.M.I.'s obligations to Coastal States. Appellant laid no predicate for the excluded testimony by showing that when Clark made the representation, Cooper and Fagan had either refused or decided to refuse to pay LaGloria for I.M.I., or why they did so. Under the record and the jury findings in this case, we find it difficult to see how the fact that Cooper declined *at some unspecified time* to pay its guaranty of I.M.I.'s obligation to LaGloria would tend to show that Clark knew *when* he made the representation to

Coastal States that Cooper and Fagan would not pay I.M.I.'s obligation to the appellant. We find nothing in the record to suggest that Fagan's and Cooper's decisions not to pay I.M.I.'s debts were made or controlled by Clark.

The parties had stipulated that during the period of time in question Fagan owned 92.9% of the stock of Cooper Petroleum, a corporation, Clark owned .133% of it and the remainder was owned by Fagan's wife, his children or their spouses. Fagan testified that no one in Cooper Petroleum had had authority to overrule any of his decisions and that at all pertinent times he had been substantially in control of the management of Cooper Petroleum. He also said that when Clark spoke to him about Cooper Petroleum's guaranteeing I.M.I.'s payment of its debt to LaGloria, he told Clark he didn't think it was a good idea; he thought one corporation could not guarantee the debts of another corporation. The record shows that Clark was dealing with both Coastal States and LaGloria in 1962 and 1963; it does not establish, however, whether this conversation occurred before or after Clark's representation to Coastal States that Cooper would pay I.M.I.'s obligation to Coastal States. Clark testified that shortly before or after he had signed the guaranty to LaGloria on behalf of Cooper he briefly mentioned this to Fagan and he thought Fagan said he was sticking his neck out and that he didn't think one corporation can guarantee the debts of another. Clark was then asked if that was in about February of 1963. He replied: "I believe that is correct—the records will show." He was asked if he believes that is about right, and he answered: "Whatever the records show is the date." We do not find that the date of the written guaranty was otherwise established.

At most this testimony shows that Clark knew that Fagan questioned the authority of Cooper to guarantee I.M.I.'s debt. Neither it nor any other evidence in the record shows that Cooper or Fagan decided not to honor any representation to LaGloria or to

Coastal States for the reason Fagan gave for his criticism of Clark's action. Fagan was expressing his view on a legal matter, and he would reasonably be expected to consult his attorney as to whether his theory was available as a defense before making a decision on that basis.

It is noted that there was testimony from which the jury would reasonably be expected to infer that LaGloria had sued Fagan on his written guaranty of some accounts. Appellant's counsel asked Fagan whether he had made an oral guaranty through Clark to LaGloria of some other accounts; Fagan said this was not true. He admitted that it had been the subject of some litigation, but not as to his oral guaranty. When asked if he hadn't been sued on an oral guaranty by LaGloria, he replied, "I have been sued * * *" His attorney then objected and the objection was sustained, but the testimony was not withdrawn from the jury's consideration and the jury was not instructed to disregard it.

In view of Fagan's almost complete ownership of Cooper Petroleum the inference could easily have been made by the jury that it was unlikely that either Fagan or Cooper Petroleum had voluntarily paid LaGloria under their guaranty.

We do not consider such evidence sufficient to place it squarely within the rule that no reversible error is presented when the same evidence is admitted from other sources, as stated in Sherwood v. Medical & Surgical Group, Inc., 334 S.W.2d 520 (Tex.Civ.App.—Waco, 1960, writ ref.), or, as stated in 4 Tex.Jur.2d 578, Appeal and Error—Civil, § 942, that no harm results from the exclusion of evidence where other evidence of substantially the same nature and effect has been admitted.

For this and the other reasons stated, however, we conclude that if it was error for the trial court to exclude the testimony of John Kane, the exclusion did not amount to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an

improper judgment in the case. We overrule appellant's first point of error.

Appellant's second point of error complains of the trial court's refusal to instruct the jury: "You are instructed that in answering the following Special Issue No. 12 the Plaintiff had no duty to inquire or make investigation into the truth or falsity of such representation of James R. Clark."

Our having overruled appellant's first point makes it unnecessary for us to rule on its second one. Had the requested instruction been given and had this caused the jury to change its answer to Issue No. 12, the appellant could not prevail in the face of the jury's answer to Issue No. 4.

Appellant's third and fourth points are that the trial court erred in submitting to the jury Issues 23 and 24, which inquired as to whether Coastal States had been negligent in its investigation of Clark's representations and in relying on them.

It is unnecessary for us to rule on appellant's third or fourth points. Coastal States' recovery is barred by the jury's finding on Issue 4, so Coastal States would not be entitled to a recovery if the answers (which were unfavorable to appellant) to Issues 23 and 24 were disregarded. The submission of Issues 23 and 24 could not conceivably have affected the jury's consideration of Issue 4; they are concerned with the question of appellant's negligence, not with what Clark knew.

Appellant's fifth point is that the trial court erred in granting an instructed verdict to defendant Cooper Petroleum Company. Appellant urges in its brief that it was entitled to have the corporate entity distinctions between I.M.I. and Cooper Petroleum disregarded.

Clark was a vice president of both companies, and was paid by both of them. Clark and Fagan each owned stock in I.M.I., and there was evidence that I.M.I. board meetings were held in Cooper's office, that the two companies shared the expense of certain telephone service and that Fagan guaranteed a motor fuel tax bond for I.M.I.'s trucks. He received consultation fees from I.M.I. and rented some of his property to I.M.I.

But appellant's officers knew of the separate corporate existence of the two companies, knew that Truitt Davis was president of I.M.I. and Albert E. Fagan was president of Cooper Petroleum and did not think that Davis had anything to do with Cooper Petroleum. Each company had different officers and directors and each operated differently from the other, I.M.I.'s office being in Abilene and Cooper's in Houston. Coporate records of I.M.I. in evidence clearly demonstrate that the two companies operated separately from each other. There is no indication in the record that I.M.I. was originally incorporated for an illegal, improper or fraudulent purpose.

Fagan testified that Cooper made loans to Clark, Davis and Wood to invest in I.M.I. stock because Cooper was "doing considerable business with I.M.I. * * * both buying from and selling to them * * it looked like they were making pretty nice returns on their deals, and I thought it was a pretty good idea to further solidify the business we could do with them." He explained that I.M.I. had trucks and Cooper did not; that I.M.I. would buy petroleum products in the Abilene area, Cooper would try to find a market for them in the Houston area and then try to find a load going back so that the trucks would be loaded both ways. If Cooper used a common carrier it would have to pay rates based on a one-way haul, so a two-way haul provided a margin for profit.

Appellant contends that this testimony shows that Cooper used I.M.I. as its trucking agent to evade the common carrier rates and this constitutes use of the corporate fiction as a protection to justify a wrong.

In Bell Oil & Gas Co. v. Allied Chemical Corp., 431 S.W.2d 336, the Texas Supreme Court cited an article by Douglas and

Shanks, "Insulation from Liability through Subsidiary Corporations" as to claims of a contractual origin: " 'The attempt to hold a parent corporation where the claim asserted is of contractual origin presents added difficulties. The very reasonable question must be met and answered why one who contracted with the subsidiary and received the promise which he bargained for but who has been disappointed in the fulfillment by the subsidiary of its commitment should then be allowed to look to the parent. As a matter of contract right it is evident he may not. Additional compelling facts must appear.' 39 Yale L.J. 193, 1. c. 210." In determining what are these "additional compelling facts" the court stated: "It seems reasonably certain, however, that the corporate arrangement must be one which is likely to be employed in achieving an inequitable result by bringing into operation a basically unfair device which in all probability will result in prejudice to those dealing with one or more of the units making up the corporate arrangement, or one which has actually resulted in the complaining party's having been placed in a position of disadvantage by the exercise of inequitable means, of which the corporate arrangement is a part." The basic rule is stated: " 'Courts will not disregard the corporation fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations.' "

■ We do not agree that Fagan's testimony as to Cooper's dealings with I.M.I. in an effort to keep down transportation expenses constitutes a wrong. We conclude that the trial court was correct in directing a verdict that the corporate entities of I.M.I. and Cooper Petroleum cannot be disregarded on the basis of this evidence.

Appellant's sixth point is that the trial court erred in granting an instructed verdict to the defendant Albert E. Fagan.

Appellant argues that Cooper Petroleum and I.M.I. were each used as the alter ego of Fagan, basing this position on the evidence we have recited plus testimony that Fagan acted as a creditor to Cooper and took liens on its properties rather than investing more money in it. At times these loans amounted to as much as $100,000.00.

The basic rule which we have cited from the Bell Oil & Gas Co. case, supra, is also applicable to this point. For the reasons we have stated in ruling on appellant's fifth point we hold that Fagan could not be held responsible for I.M.I.'s debts under the alter ego theory.

Fagan acquired control of Cooper Petroleum prior to 1954. Appellant's officers were aware when they were dealing with Cooper Petroleum that they were dealing with a corporation. Fagan did not ignore Cooper's corporate entity, and Cooper has not been shown to be a mere fiction set up to conceal fraudulent business operations. Evans v. General Insurance Co. of America, 390 S.W.2d 818 (Tex.Civ.App.—Dallas, 1965, no writ). We overrule this point.

The judgment of the Trial Court is affirmed.